UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ILLINOIS

In Re ) 
 ) Case No.    26-30084
EDWARD J. ONKEN and )
TAMI L. BOREN, )
 ) Chapter 13
Debtors. )

## O P I N I O N

Before the Court is the Chapter 13 Trustee's objection to the Debtors' claim of exemption in jewelry. For the reasons set forth herein, the objection will be overruled and the claim of exemption will be allowed.

### I.    Factual Background

The Debtors, Edward J. Onken and Tami L. Boren, filed their voluntary petition under Chapter 13 on January 30, 2026. On their schedules filed February 12, 2026, the Debtors listed ownership of several items and categories of items of personal property, including various household appliances and furnishings, electronics, clothing, and pets, as well as a "12g Rock Island Armory M5 Shotgun" valued at $150 and "Costume Jewelry" valued at $20. The Debtors claimed exemptions in the items—including the firearm and jewelry—in the amount of their scheduled values under the newly amended Illinois personal property exemption provision at 735 ILCS 5/12-1001(a). A month later, the Chapter 13 Trustee filed his objection to the Debtors' claims of exemption under 735 ILCS 5/12-1001(a) as to the firearm and costume jewelry, arguing that the claimed exemptions were an improper use of the Illinois exemption provision

-1-

reserved for "usual and customary household goods" and "one piece of jewelry with a value of no more than $5,000.00."

At a hearing held April 16, 2026, the Chapter 13 Trustee withdrew his objection to the claim of exemption in the firearm based on the ruling of another judge in a different case but expressed his intention to stand on his objection to the claim of exemption in jewelry. The attorney for the Debtors disagreed with the Trustee's position that the claim of exemption in jewelry was improper and asked for an opportunity to research the issue of first impression and file a written brief in opposition to the Trustee's objection. The Court granted the Debtors' request and also gave the Trustee leave to file his own written brief in reply, after which time the Court said it would take the issue under advisement.

Both sides timely filed their briefs in support of their respective positions. The Debtors first noted that the amended Illinois exemption provision significantly broadened the scope and expanded the protections of the former provision. And although they seemed to concede that the plain language of the jewelry provision purported to limit the exemption to a single piece of jewelry, they argued that the Court should look past the plain meaning because it would lead to absurd results. The Trustee, on the other hand, points to the plain language of the jewelry provision, arguing that the statute could not be clearer: the Debtors "may [each] exempt one piece of jewelry up to a value of $5,000."

The Court has reviewed and considered the arguments of the parties. The matter is now ready for decision.

## II.   Jurisdiction

This Court has jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11" pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Southern District of Illinois have been referred to the bankruptcy judges. SDIL-LR Br1001.1; *see* 28 U.S.C. §157(a). Matters involving the exemption of property from a bankruptcy estate are core proceedings. 28 U.S.C. §157(b)(2)(B). The issue before the Court arises from the Debtors' bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III.   Legal Analysis

A bankruptcy estate "is comprised of . . . all legal and equitable interests of the debtor in property as of the commencement of the case[.]" 11 U.S.C. §541(a)(1). A debtor is entitled to claim certain exemptions in his or her property, thereby removing such exempted property from the estate. *Payne v. Wood*, 775 F.2d 202, 204 (7th Cir. 1985). Non-exempt property remains in the estate for the benefit of creditors. *Id.* The interplay between the creation of an estate comprised of property available for the benefit of creditors and a debtor's right to remove certain property from that estate by claim of exemption highlights two main but competing purposes of bankruptcy: the "prompt and effectual administration and settlement of the bankruptcy estate" and "protecting a debtor's fresh start."

*In re Awayda,* 574 B.R. 692, 695 (Bankr. C.D. Ill. 2017) (citing *Katchen v. Landy,* 382 U.S. 323, 328-29 (1966)) (internal quotation marks omitted).

At issue in this case are the newly amended exemption provisions of Illinois related to personal property, which the parties appear to agree are applicable to the Debtors here.[1] The operable provisions state as follows.

> The following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent:
>
> (a)  All household goods, including but not limited to, the debtor's and the debtor's dependents' food, eating and cooking utensils, bedding, furniture, books, refrigerator, stove, microwave oven, kitchen appliances, necessary provisions, washing machine, clothes dryer, vacuum cleaner, yard equipment and household equipment and tools, all personal possessions, including, but not limited to, clothing, pets, personal health aids, medications, computers or similar electronic devices and telephones, except that a creditor may obtain court permission to levy on any item of furniture, appliance, electronic device, yard equipment, precious item, utensils, set of utensils, or any other item exempt under this subsection that has a resale value of more than $5,000 unless that item is exempt under another provision of this Section. The debtor may exempt one piece of jewelry up to a value of $5,000[.]

735 ILCS 5/12-1001(a) (effective Jan. 1, 2026).

Specifically, the dispute here revolves around the final sentence of subsection (a) stating that a "debtor may exempt one piece of jewelry up to a value of $5,000[.]" In the Trustee's view, the words speak for themselves and plainly limit the availability of the exemption to one piece of jewelry (up to a value of $5,000) per debtor. The Trustee believes that the existence of this separate provision addressing jewelry leads to the inference that the broader personal

---

[1] Illinois law controls here because Illinois has opted out of the federal exemptions and requires its residents to use the Illinois exemptions in bankruptcy cases. 11 U.S.C. §522(b); 735 ILCS 5/12-1201.

property provisions preceding it have no application and offer no protection for jewelry beyond that provided for a single piece of jewelry in the final sentence of the subsection. The Debtors counter that the amendment unquestionably expanded the scope of exemptions available under the prior version of the statute and, because the specific mention of jewelry in the final sentence was included in the same subsection newly providing expansive protections for a debtor's household goods and personal possessions, it must be read in conjunction with those surrounding provisions of the subsection. In so reading subsection (a), and keeping in mind the expansion of the personal property exemptions in general, the Debtors contend that the statute is naturally interpreted as ensuring that a debtor can protect one piece of valuable jewelry while also offering general protection over all a debtor's jewelry so long as the value of that other jewelry is not excessive. They also contend that the Trustee's interpretation of the plain meaning of the final sentence of subsection (a), read in isolation from the surrounding language, would lead to absurd results.

Because it is an Illinois statute that is at issue, the Court must apply the rules of statutory construction followed in Illinois. *In re Hernandez*, 918 F.3d 563, 569 (7th Cir. 2019). "The cardinal rule in construing a statute is to ascertain and give effect to the legislative intent." *Lavery v. Dep't of Fin. & Pro. Regul.,* 2025 IL 130033, ¶22, 279 N.E.3d 664, 673 (quoting *In re Jarquan B.*, 2017 IL 121483, ¶22, 102 N.E.3d 182, 187). "The most reliable indicator of that intent is the plain and ordinary meaning of the statutory language itself." *Id.* (quoting *Jarquan B.,* 2017 IL 121483, ¶22, 102 N.E.3d at 187). "In determining the plain meaning of

statutory terms, [courts] consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it." *Id.* (quoting *Blum v. Koster*, 235 Ill. 2d 21, 29, 919 N.E.2d 333, 338 (2009)). As the Illinois Supreme Court has explained:

> A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. . . . The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. Also, a court presumes that the General Assembly, in its enactment of legislation, did not intend absurdity, inconvenience, or injustice.

*People v. Perez*, 2014 IL 115927, ¶9, 18 N.E.3d 41, 44 (citations omitted). Only when the plain language of the statute is unambiguous and consistent with the apparent intent of the legislature should the words be given effect without further analysis. *Lavery,* 2025 IL 130033, ¶22, 279 N.E.3d at 673. "When a statute is subject to various interpretations, however, a court should look to other sources for evidence of the legislative intent such as the statute's legislative history, the reason for the statute's enactment, the circumstances that led to its adoption, and the ends that the legislature wished to achieve." *Matter of Barker*, 768 F.2d 191, 195 (7th Cir. 1985) (citing *In re Marriage of Logston*, 103 Ill. 2d 266, 279, 469 N.E.2d 167, 172 (1984)).

There are also special considerations for interpreting the statute at issue here. When dealing specifically with Illinois exemption law, the Seventh Circuit and "the courts in Illinois have consistently held that personal property

exemption statutes should be liberally construed in order to carry out the legislature's purpose in enacting them—to protect debtors." *Barker*, 768 F.2d at 196 (collecting cases); *McClellan v. Powell*, 109 Ill. App. 222, 225 (1903) (Exemption statutes "are not to be strictly construed, but they should receive such construction as will carry out the obvious purpose of the legislature in enacting them, to protect the debtor."). As a result, "where an exemption statute might be interpreted either favorably or unfavorably vis-à-vis a debtor, [courts] should interpret the statute in a manner that favors the debtor." *In re Robinson*, 811 F.3d 267, 270-71 (7th Cir. 2016) (quoting *Barker*, 768 F.2d at 196).

### A. The Amendments to 735 ILCS 5/12-1001(a)

Read as a unit, amended subsection (a) of the Illinois personal property exemption statute is comprised of three parts. The subsection begins by providing an expansive exemption in "household goods" and "personal possessions" and includes nonexclusive lists of examples of each. In the second half of the opening sentence, subsection (a) creates a way for creditors to potentially claw back the broad protections offered in the opening clause and levy on exempt property under certain circumstances. Immediately following the levy provision in a separate sentence is the third part which is in dispute here that states "[t]he debtor may exempt one piece of jewelry up to a value of $5,000."

*1. The Broad Exemption in All Household Goods and Personal Possessions*

Beginning with first half of the opening sentence of subsection (a), it plainly provides a categorical exemption for "all household goods" and "all personal possessions" without regard to value or amount. Neither term is defined but both are accompanied by an illustrative list of nonexclusive examples. The named examples of "household goods" are "the debtor's and the debtor's dependents' food, eating and cooking utensils, bedding, furniture, books, refrigerator, stove, microwave oven, kitchen appliances, necessary provisions, washing machine, clothes dryer, vacuum cleaner, yard equipment and household equipment and tools[.]" The named examples of "personal possessions" are "clothing, pets, personal health aids, medications, computers or similar electronic devices and telephones[.]" Jewelry is not specifically listed as an example of covered items, but, as the exemption is expressly not limited to the items listed, that in itself is not a basis for exclusion.

Again, the Illinois statute does not define "personal possessions."[2] Nor is there a dictionary definition for "personal possessions." There are, however, both legal and common definitions for each of the words that make up the phrase. For present purposes, "personal" is an adjective used to describe something "of or affecting a person" or, in relation to property, that which "is not classifiable as real property." *Personal*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also*

---

[2] "Household goods" is also not defined in the Illinois statute but has been described, for purposes under the Bankruptcy Code, as requiring "a functional nexus between the household and the goods found in or around the home used to support and facilitate daily life within the home and the household." *In re Thomas*, 2005 WL 2429963, at *2 (Bankr. C.D. Ill. Sept. 21, 2005) (Perkins, J.). The Debtors do not argue that jewelry is a "household good" and, in this Court's view, a protracted analysis of the term would not be helpful. The discussion here assumes that jewelry is not a "household good" and focuses instead whether jewelry is a "personal possession."

*personal,* MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY, https://unabridged.merriam-webster.com/unabridged/personal (last visited July 13, 2026) (similar definition). "Possession" is defined as "something that a person owns or controls," *possession,* BLACK'S LAW DICTIONARY (12th ed. 2024), with the plural "possessions" commonly understood as referring to "the aggregate of things owned," *possessions,* MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY, https://unabridged.merriam-webster.com/unabridged/possessions (last visited July 13, 2026). Absent any legislative indication to the contrary, the dictionary definitions of the separate terms together are certainly broad enough to include jewelry. The question is whether that conclusion is supported by a contextual analysis of the statute and any other apparent evidence of legislative intent.

Amended subsection (a) marks an obvious and significant expansion of the protections offered under its predecessor. The prior version of subsection (a) provided an exemption in "[t]he necessary wearing apparel, bible, school books, and family pictures of the debtor and the debtor's dependents[.]" 735 ILCS 5/12-1001(a) (effective Jan. 1, 2019) (amended Jan. 1, 2026). The exemption applied to the listed items regardless of value, *see, e.g., Robinson,* 811 F.3d at 268 ($10,000 first edition Book of Mormon exempt), and through several iterations had been construed to include at least some items of jewelry, *see In re Medina,* 2017 WL 5633268, at *4 (Bankr. N.D. Ill. Nov. 20, 2017) (wedding or engagement ring exempt as "necessary wearing apparel"), and *In re Deacon,* 27 F. Supp. 296 (S.D. Ill.1939) ("one watch, one consistory ring, [and] one diamond shirt stud"

exempt as "necessary wearing apparel"). For all other personal property, debtors had to look to other subsections of the Illinois exemption statute for available protections. To that end, the statute provided specific exemptions for certain property, like vehicles and tools of the trade up to a prescribed amount, as well as a catch-all "wild card" exemption for a debtor's interest in any other property up to $4,000. *See* 735 ILCS 5/12-1001(b)-(d). The wild card exemption was commonly used to protect a debtor's interest in household goods, furniture, appliances, and the like, as well as pets, electronics, and other items of personal property that did not fit neatly into one pointed exemption provision or another.

As amended, however, subsection (a) opens with an all-encompassing exemption in "household goods" and "personal possessions" not limited to the enumerated examples of protected items. Notably, the illustrative lists of exempt items are largely comprised of property not covered under the prior version of subsection (a). Furniture, appliances, electronics, pets and several other items are now expressly exempt without limit, leaving the $4,000 wild card exemption available for other use. And given that the first part of amended subsection (a) clearly expanded the protections of the prior version of the same subsection under which an exemption in jewelry was widely recognized, it is hardly surprising that jewelry is not among the enumerated examples of property exempt under the new provision.

The first part of amended subsection (a) evidences an intent to bolster the exemption protections available to debtors, seemingly in furtherance of broader exemption policy. That intent is reflected throughout the 2026 amendments to

the Illinois exemption statutes. *See, e.g.,* 735 ILCS 5/12-1001(c) (increasing motor vehicle exemption from $2,400 to $3,600), (d) (increasing tools of the trade exemption from $1,500 to $2,250), (h)(4) (increasing personal bodily injury payment exemption from $15,000 to $22,500); *see also* 735 ILCS 5/12-901 (increasing homestead exemption from $15,000 to $50,000). The result is undeniable; debtors can exempt more property in greater amounts under the amended statute than they could have under its predecessor. In the absence of countervailing evidence of contrary legislative intent, this Court concludes— based on the obvious effort to expand on the exemptions available to debtors and the long-established purpose of the exemption statutes that is to protect debtors—that the opening provision of subsection (a) exempting "all household goods" and "all personal possessions" plainly includes a debtor's jewelry.

But that is not the end of the inquiry.

### 2. *The Levy Provision*

Despite the all-encompassing protections set forth in the opening provision of amended subsection (a), it is immediately followed by language, as part of the same sentence, that operates to potentially limit or claw back the reach of the exemption protections in certain circumstances. Not found in the prior statute, the second part of amended subsection (a) now allows creditors to seek "permission to levy on any item of furniture, appliance, electronic device, yard equipment, precious item, utensils, set of utensils, or any other item exempt under this subsection that has a resale value of more than $5,000 unless that

item is exempt under another provision of this Section." 735 ILCS 5/12-1001(a). The question, for present purposes, is what the provision means in terms of an available exemption in jewelry.

In listing some but not all items identified as examples of "household goods" and "personal possessions" in the first part of the sentence, the second part of the sentence curiously refers—for the first and only time—to "precious items" as among the exempt household goods and personal possessions upon which a creditor may be able to levy. As with other important terms, the legislature declined to define "precious item" and the statute offers little guidance, leaving the inference to be drawn that the general, unlimited exemption for household goods and personal possessions extends to more than a debtor's bare necessities and applies broadly to also include a debtor's valuables. *See precious*, MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY, https://unabridged.merriam-webster.com/unabridged/precious (last visited July 15, 2026) (defining "precious" as describing something "of great value or high price"). Jewelry of any meaningful value would surely fall within the ordinary meaning of "precious item" along with countless other personal possessions and household goods of value. This provides further evidence that the general exemption outlined in the first part of subsection (a) covers jewelry. A deeper dive into the mechanics of the levy provision offers additional support.

The levy provision in subsection (a) is grammatically structured in a way that allows levy on two distinct categories of items: one consisting of "any item of furniture, appliance, electronic device, yard equipment, precious item,

utensils, [or] set of utensils," and another consisting of "any other item exempt under this subsection that has a resale value of more than $5,000[.]" According to the Trustee, the levy exception provision imposes a $5,000 minimum value requirement on any item exempt under the broad language of subsection (a) against which a creditor seeks relief. But the Trustee's reading would make the listing of particular items in the levy provision meaningless surplusage. Fundamental principles of statutory interpretation require that statutes be read—to the extent possible—in a manner that gives effect to every word, clause, and sentence and that does not render any part superfluous. *See Perez*, 2014 IL 115927, ¶9, 18 N.E.3d at 44. To give all the words and clauses effect here, the levy provision in subsection (a) must be read as imposing different requirements for levy on the first category of listed items and the second category comprised of "any other item exempt under this subsection"—the former requiring court permission and the latter requiring a $5,000 minimum resale value in addition to court permission.

The inference drawn from reading the levy provision this way is that the legislature saw fit to make it easier to levy on some items than others. A possible reason for the distinction can be gleaned from what the legislature chose to include as compared to what it excluded. Again, the first category of items subject to levy without meeting a $5,000 minimum value requirement consists of "any item of furniture, appliance, electronic device, yard equipment, precious item, utensils, [or] set of utensils[.]" Aside from "precious items," each item identified is among the enumerated examples of "household goods" and

"personal possessions" in the first part of the subsection. By contrast, the following items identified as exempt household goods and personal possessions in the first part of the sentence are conspicuously omitted from the enumerated list subject to levy in the second part: food, bedding, books, necessary provisions, household equipment and tools, clothing, pets, personal health aids, and medications. As for what separates the two categories, one answer lies in the Illinois exemption statute's own history.

The adoption of the first exemption statute in Illinois was prompted by a "humane principle" which was to "provide support for the debtor and his family and to prevent them from becoming public charges." *Auto Owners Ins. v. Berkshire*, 225 Ill. App. 3d 695, 699-700, 588 N.E.2d 1230, 1233 (1992) (citing *Logston*, 103 Ill. 2d at 279-80, 469 N.E.2d at 172-73); *Good v. Fogg*, 61 Ill. 449, 451 (1871). Historically limited to a small number of items essential to not only a debtor's basic needs but also future support and items of sentimental value, subsection (a) now exempts much more. By and large, the enumerated list in the levy provision is comprised of items that would fall into a category of things which would not have been exempt under the prior versions of subsection (a). On the other side of the divide, the examples of household goods and personal possessions identified in the broad exemption language but not incorporated into the category of enumerated items in the levy provision are ones that either have been traditionally protected under subsection (a) or at least evoke the same sense of humanity consistent with protecting a debtor's basic needs and future support along with items of particular personal or sentimental value.

All that is to say there appears to be a valid reason for imposing different standards for two separate categories of items subject to levy under subsection (a). Regardless, the Illinois legislature is presumed to have acted intentionally when it included some but not all of the enumerated examples of "household goods" and "personal possessions" in crafting the levy provision of amended subsection (a), *People v. Reed*, 2025 IL 130595, ¶101, 280 N.E. 3d 102, 121, and, in order to give all words of the statute effect, the only fair reading of subsection (a) is one that permits levy on some items—including precious items like jewelry—without imposing a minimum value requirement while imposing a $5,000 minimum resale value requirement for others.

Given their plain and ordinary meaning, the broad exemption provision and levy exception provision comprising the first sentence of amended subsection (a)—each on their own as well as together—must be read as to encompass jewelry. Having concluded as much, the Court turns to the sentence that immediately follows the first.

### 3. The $5,000 Jewelry Exemption

The final, stand-alone sentence upon which the Trustee's argument here turns provides that a "debtor may exempt one piece of jewelry up to a value of $5,000[.]" 735 ILCS 5/12-1001(a). Read in isolation, the Trustee's interpretation of the final sentence of subsection (a) as limiting the availability of an exemption in jewelry to one piece of $5,000 value or less might have some appeal. But the sentence comes on the heels of the first two provisions already analyzed and,

when read in the context of the rest of subsection (a) and the exemption statute as a whole—as rules of construction require, *Perez,* 2014 IL 115927, ¶9, 18 N.E.3d at 44—that same sentence takes on quite a different meaning, one more favorable to debtors in furtherance of the statute's underlying purpose, *Robinson,* 811 F.3d at 270-71; *Barker,* 768 F.2d at 196.

As discussed, the first part of subsection (a) creates a baseline by which "all household goods" and "all personal possessions" of a debtor are exempt without regard to value. Through the second part of subsection (a)—the levy provision—the Illinois legislature offers a way for creditors to potentially claw back some of the broad protections provided in the first part. Then comes the third part, which, in the context of the broader exemption provisions, this Court construes as a savings clause of sorts that offers debtors an added layer of protection for one piece of jewelry to counter a creditor's prospects of levying on the exempt property.

Reading the personal property exemption statute as a whole, the statutory scheme is one that offers protection for different types or items of property, subject to limitations in amount according to the property's value. *In re Rhodes,* 147 B.R. 443, 447 (Bankr. N.D. Ill. 1992). "Some personal property is exempt regardless of its value[,]" whereas other "property is exempt subject to a value limitation." *Id.* The practical effect of this scheme is that property exemptions subject to a value limitation leave property vulnerable to creditors to the extent its value exceeds the allowed amount of the exemption, whereas property that is exempt regardless of its value enjoys complete protection from creditor action.

Amended subsection (a) is unique in that provides a blanket exemption regardless of the property's value while also preserving a creditor's ability to proceed against the exempt property. But, in crafting the provisions of subsection (a) in this way, the Illinois legislature created a gap in which debtors, notwithstanding the blanket protections in the first part of the subsection, could lose their property to creditor levy without being compensated for the exemption.

Of course, the $5,000 resale value requirement in the levy provision somewhat softens the potentially harsh results of creditor levy; although debtors would still not be entitled to compensation for their exemption, it at least gives debtors some breathing room to meet their basic needs and avoid becoming public charges. But, as discussed, the $5,000 minimum value requirement does not apply to precious items and other enumerated property in the levy provision. And, because precious items are synonymous with value, debtors would therefore be all but certain to lose their exemption in such items as a matter of course.

On a certain level, this makes perfect sense. It is not hard to imagine the potential windfalls and abuses to which broad, unlimited exemption protections could give rise. Left unrestricted, the exemptions offered in subsection (a) could allow a debtor to protect any number of high-ticket items, from fine art and rare collectibles to high-end versions of everyday items. Naturally, the legislature saw fit to constrain unintended outcomes and even went so far as to name precious items—of which jewelry is a classic example—as a clear candidate for levy. But discord would be bound to arise between efforts to curb unintended

consequences and the traditionally recognized exemption for at least some jewelry under subsection (a) of the Illinois personal property exemption statute. *See Medina*, 2017 WL 5633268, at *4 (wedding or engagement ring exempt); *Deacon*, 27 F. Supp. 296 (watch, consistory ring, and diamond shirt stud exempt). Thus the importance of the final sentence of amended subsection (a).

By following the levy exception provision with language allowing a debtor to "exempt one piece of jewelry up to a value of $5,000[,]" the Illinois legislature made a point to single out jewelry and preserve a debtor's ability to protect one piece up to $5,000 in value against creditor levy. In doing so, the legislature accomplished its obvious goal of broadly expanding the scope of personal property exemptions while also limiting the potential for unintended windfalls and abuses through similarly broad language all without writing out of the statute the widely recognized protections for a given amount of jewelry. In other words, the final sentence of subsection (a) is a necessary component of the whole rather than a completely unrelated exemption with no connection to the surrounding provisions of the same subsection within which it was placed.

The Trustee argues that the "one piece of jewelry" language evinces an obvious intent to limit debtors to exempting a single piece of jewelry and that reading subsection (a) as the Court does renders the final sentence meaningless. But as explained, the Court finds the opposite to be true. Subsection (a) can and—to give every word and clause effect—must be read as exempting jewelry under the broader exemption language subject to a creditor's ability to levy save for a single piece the debtor specifically elects to protect against such efforts. The

-18-

Trustee's argument also turns on his understanding of the levy provision as imposing a $5,000 minimum value requirement on all items without distinction which this Court has already addressed and rejected. But even if the Court were incorrect in its reading of the levy provision, the Trustee's reading would not make the final sentence of the subsection a nullity.

As explained, the Illinois exemption statutes are constructed in a way that offers protection for different types or specific items of property, subject to limitations in amount according to the property's value. *Rhodes*, 147 B.R. at 447. Several subsections of the statute provide for claims of exemption up to a specified value of an interest in a particular item or category of property. *See* 735 ILCS 5/12-1001(b) (exempting "[t]he debtor's equity interest, not to exceed $4,000 in value, . . . in any other property"); 735 ILCS 5/12-1001(c) (exempting "[t]he debtor's interest, not to exceed $3,600 in value, in any one motor vehicle"); 735 ILCS 5/12-1001(d) (exempting "[t]he debtor's equity interest, not to exceed $2,250 in value, in . . . tools of the trade of the debtor"). Of course, each of these exemption provisions expressly state that they protect the debtor's "interest" or "equity interest" in certain property, and the jewelry provision in subsection (a) does not use those words to describe the exemption which might suggest it should be interpreted differently. *See In re Marriage of Paris*, 2020 IL App (1st) 181116, ¶38, 164 N.E.3d 41, 50 (citation omitted) ("[W]hen the legislature uses certain words in one instance and different words in another, it intends a different meaning."). Even so, the legislature used different words in drafting subsections (b), (c), and (d), yet courts applying Illinois personal property

-19-

exemption provisions have long construed the term "interest" in subsection (c) to mean the same thing as the phrase "equity interest" found in subsections (b) and (d) of the same section. *See, e.g., In re Jennings*, 107 B.R. 165, 166 (Bankr. S.D. Ill. 1989); *Medaris v. Commercial Bank of Champaign*, 146 Ill. App. 3d 1014, 1016, 497 N.E.2d 833, 835 (1986). That the legislature opted to use slightly different words in amending subsection (a) is therefore not dispositive of legislative intent.

Similarly, subsections (b) and (c) are both structured in a way that is naturally read as exempting the debtor's interest in certain property rather than the property itself, whereas the structure of the final sentence of amended subsection (a) could be read as exempting the property as opposed to the debtor's interest therein. This strict construction based on sentence structure is sometimes referred to as the "last antecedent doctrine." But as one bankruptcy court explained in declining to construe subsection (h)(4) of the same statute in such manner, the last antecedent doctrine "is not to be applied when the intent of the legislature disclosed by the context and reading of the entire statute requires a different reading." *Rhodes*, 147 B.R. at 446-47 (citation omitted) (internal quotation marks omitted).

Like subsection (c), the last sentence in amended subsection (a) provides an exemption in relation to one item of a specified type of property. And similar to subsections (c) and (d), as well as subsection (h)(4), the final sentence of subsection (a) refers to a dollar value as a limitation on the exemption. Accordingly, while ultimately not determinative of the present dispute, the Court

reads the final sentence of amended subsection (a) of the Illinois personal property exemption statute as protecting up to $5,000 of value in any one piece of jewelry notwithstanding minor differences in the words or syntax used. To do otherwise would lead to disparity in that debtors whose only jewelry is worth more than $5,000 would simply be denied any protections under the statute and would contravene the presumption against absurdity and injustice that underlies principles of statutory construction; to the extent reasonable, statutes should be construed to avoid absurd, inconvenient, or unjust consequences. *See Perez*, 2014 IL 115927, ¶9, 18 N.E.3d at 44; *In re B.L.S.*, 202 Ill. 2d 510, 514-15, 782 N.E.2d 217, 220-21 (2002); *Antunes v. Sookhakitch*, 146 Ill. 2d 477, 486, 588 N.E.2d 1111, 1115 (1992).

Ultimately, however the levy provision and $5,000 jewelry provision are construed to operate in a particular situation, it would not change the fact that the broad exemption language in subsection (a) plainly covers jewelry. Construing subsection (a) as generally protecting a debtor's jewelry subject to possible levy with court permission but also allowing the debtor to protect up to $5,000 of value in any one piece of jewelry against such levy best gives effect to all the words, clauses, and sentences of the subsection and statute as a whole and avoids rendering any part of the statute meaningless. Because subsection (a) is appropriately interpreted in such manner, the Court finds that a debtor may claim more than one piece of jewelry exempt thereunder subject to possible levy save for a single piece of jewelry up to a value of $5,000 at the debtor's election.

## B. Application of the Statute

Here, the Debtors claimed an exemption in "Costume Jewelry" they valued at $20, citing 735 ILCS 5/12-1001(a) as authority. Because the Court finds the exemption proper under the broader exemption language of subsection (a), the Trustee's objection based on his reading of the statute as limiting the Debtors to an exemption in a single piece of jewelry will be overruled.

That said, the Debtors' schedules give no meaningful information as to the particular items of jewelry being claimed as exempt. Being that the "Costume Jewelry" scheduled and claimed exempt is apparently of little value, it may not be consequential in this case. But, like any other case, the Trustee is not required to accept the value of property ascribed by the Debtors in their schedules, and, in the event it is revealed that there is potentially meaningful value to be realized, the Debtors' exemption, as claimed, might not be enough to save the jewelry from the levy provisions of the statute. Further, and notwithstanding state law exemption provisions, a certain level of specificity is required in completing bankruptcy schedules. *In re Harding*, 2023 WL 5525039, at *5 (Bankr. C.D. Ill. Aug. 25, 2023). Debtors must provide sufficient detail in their schedules "to put the trustee on notice of the wisdom of further inquiry," *Payne*, 775 F.2d at 206, and among the possible consequences of not doing so is a limitation on exemptions they may otherwise be entitled to, *In re Rosenzweig*, 245 B.R. 836, 841 (Bankr. N.D. Ill. 2000).

But under the facts as known, the Court finds that the Debtors' claim of exemption in jewelry under 735 ILCS 5/12-1001(a) is proper, and the Trustee's

objection based on a narrow reading of the statute that excludes a general exemption in jewelry will be overruled.

### IV.   Conclusion

In amending the Illinois personal property exemption statute, the legislature completely rewrote subsection (a). Adding terms and phraseology not used elsewhere in the statute to craft a new, multi-faceted exemption provision, the statute certainly would have benefited from more artful drafting. Nevertheless, the legislature's intent to broadly expand the protections historically available to debtors under subsection (a) is manifest. How the new statute will operate in conjunction with the Bankruptcy Code in different circumstances is beyond the scope of the decision here and is a question left for another day. For now, it suffices to answer a threshold question by stating that the exemption in "all household goods" and "all personal possessions" under subsection (a) of the Illinois personal property exemption, as amended, is broad enough to include a debtor's jewelry.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

ENTERED: July 24, 2026

/s/ Mary P. Gorman

UNITED STATES BANKRUPTCY JUDGE